IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD LICKMAN, an individual; LISA LICKMAN, an individual; QUINN LICKMAN, an individual; SDL CONSTRUCTION CORP., a Delaware Corporation; and THE HARRIMAN CORP., a Delaware Corporation,<br>          Plaintiffs<br><br>          v.<br><br>ROBERT RIVKIN, an individual; and GERALD S. JACOBS, an individual, and collectively as an Association In Fact; RAUSCH CREEK DEVELOPMENT, L.L.C., a Pennsylvania Limited Liability Company; RAUSCH CREEK LAND, L.P., a Pennsylvania Limited Partnership; RCL HOLDING, LTD., an Ohio Limited Liability Company; and RCL CAPITAL LTD., an Ohio Limited Liability Company,<br>          Defendants | No. 3:05cv1793<br><br>(Judge Munley) |

## MEMORANDUM

Before the court for disposition are the defendants' motions to dismiss in this civil Racketeer Influenced and Corrupt Organizations Act (hereinafter "RICO") action.[1] The motions have been fully briefed and are ripe for disposition.

**Background**[2]

Plaintiffs in the instant action are SDL Construction Corporation, Harriman Corporation, Ronald Lickman, Lisa Lickman and Quinn Lickman, (hereinafter for

---

[1]One motion to dismiss was filed jointly by Defendants Robert Rivkin, Rausch Creek Development, LLC, and Rausch Creek Land, LP, and a second motion to dismiss was filed by Defendants Gerald Jacobs, RCL Holdings, LTD, and RCL Capital LTD.  As the issues raised in both motions are nearly identical, we will discuss them together and refer to all the defendants collectively as "defendants."

[2]The background facts are derived from the plaintiffs' complaint.

purposes of clarity we will refer to these individual plaintiffs as "Ronald," "Lisa," and "Quinn," respectively, when we need to discuss them separately).  Lisa owns the two corporate plaintiffs.

The defendants are Robert Rivkin, Gerald Jacobs, Rausch Creek Development, L.L.C., (hereinafter "Development"), Rausch Creek Land L.P., (hereinafter "RC Land"), RCL Holding, LTD., (hereinafter "Holding"), and RCL Capital (hereinafter "Capital").

Defendant RC Land is a limited partnership. Its general partner is Defendant Holding, which is owned by Defendant Jacobs.  The limited partners are the individual plaintiffs and Defendant Rivkin.

RC Land owns parcels of 14,000 acres of real estate in Schuylkill County that will be valued at 25 million dollars once it is developed.  RC Land managed the commercial and economic development of this property.  RC Land employed both Lisa and Quin.  Pursuant to the partnership agreement, Ronald, while not an employee, was guaranteed a yearly partnership distribution of $100,000.00.

Plaintiffs assert that Defendants Jacobs and Rivkin entered into a scheme to defraud the plaintiffs and wrongfully obtain the Lickmans' ownership interest in RC Land.  They assert that the defendants wrongfully terminated Lisa's and Quinn's employment and fraudulently and wrongfully convinced the Lickmans to invest $390,000.00 in RC Land.  They also assert that defendants abrogated Ronald's partnership agreement and breached their fiduciary duties to Ronald, Lisa and Quinn.

Accordingly, plaintiffs filed the instant complaint seeking compensatory and punitive damages, temporary and permanent injunctive relief, attorneys fees and other equitable relief.

Count I and II of the complaint allege a RICO cause of action and a RICO

conspiracy.  The remaining sixteen counts allege state law causes of action.[3]  Defendants have moved to dismiss the RICO-related causes of action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure  bringing the case to its present posture.

**Standard of review**

When a 12(b)(6) motion is filed, the sufficiency of a complaint's allegations are tested.  The issue is whether the facts alleged in the complaint, if true, support a claim upon which relief can be granted.  In deciding a 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and give the pleader the benefit of all reasonable inferences that can fairly be drawn therefrom, and view them in the light most favorable to the plaintiff.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

**Jurisdiction**

As this case is brought pursuant to the federal RICO statute, we  have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  We have supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**Discussion**

RICO makes it a crime "to conduct" an "enterprise's affairs through a

---

[3]The plaintiffs' state law claims include: Fraudulent inducement, breach of Quinn's employment contract and partnership agreement, breach of Lisa's employment agreement and partnership agreement, breach of Ronald's partnership agreement, conversion of property, unjust enrichment, promissory estoppel, writ of replevin, defamation, breach of fiduciary duty, breach of partnership agreement, intentional interference with business relationships and prospective contractual relations, civil conspiracy, appointment of a receiver and request for an accounting.  (Compl. Cts. 3-18).

3

pattern of racketeering activity." 18 U.S.C. § 1962.  A plaintiff must plead the following to assert a proper RICO violation: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Lum v. Bank of America, 361 F.3d 217, 223 (3d Cir. 2004).  The phrase "racketeering activity" is defined in terms of activity that violates other laws, including more than fifty (50) specifically mentioned federal statutes, which forbid, for example, murder-for-hire, extortion, and various kinds of fraud.  See 18 U.S.C. § 1961(1); Klehr v. A.O. Smith Corp., 521 U.S. 179, 183 (1997).  Although, RICO is generally criminal in nature, it also provides for civil remedies.  As to a civil RICO action, "[a]ny person injured in his business or property by reason of a" RICO violation may recover, *inter alia*, treble damages.  18 U.S.C. § 1964(c).  Plaintiffs have brought such a RICO civil action.

Defendants have raised four claims attacking the plaintiff's RICO action. The claims are:  1) plaintiffs lack standing to bring a RICO cause of action; 2) plaintiffs have failed to allege the required continuity; 3) plaintiffs have failed to allege that the enterprise and racketeering activity are separate and distinct; and 4) plaintiffs have failed to allege fraud with the required particularity.  We will address these issues *in seriatim*.

**1. Standing**

Defendants assert that plaintiffs have no standing to assert a RICO cause of action as they have not alleged any concrete loss that they have suffered, nor do they indicate how any purported loss was caused by racketeering activity. Defendants argue that any loss plaintiffs suffered, or will suffer, resulted from defaults in contractual agreements and commercial disputes, not racketeering. Plaintiffs assert that they have suffered tangible economic injuries as a result of the Jacobs-Rivkin scheme.  After a careful review, we find that the plaintiffs have

4

standing to assert a RICO cause of action.

RICO standing is conferred upon any person injured in his business or property by reason of a violation of the RICO statute.   18 U.S.C. § 1964(c). Thus, a RICO plaintiff must "make two related but analytically distinct threshold showings relevant to standing: (1) that the plaintiff suffered an injury to business or property; and (2) that the plaintiff's injury was proximately caused by defendant's violation of 18 U.S.C. § 1962."  Maio v. Aetna, Inc., 221 F.3d 472, 483 (3d Cir. 2000).[4]

In the instant case, plaintiff alleges, *inter alia*, the following injuries:  Lisa and Quinn have been unjustly fired, and suffered a loss of their salaries. (Amended Complaint ¶ 60 - 88).  Ronald has been deprived of the annual payments he is entitled to under the partnership agreement.  (Id. at 89-92).  The Lickmans lost $390,000.00 that they invested into RC Land based upon defendants' fraudulent misrepresentations.  (Id. at ¶ 35).  Additionally, plaintiffs allege that Defendant Rivkin agreed to purchase or lease certain equipment owned by plaintiffs.  After using the equipment for over a year Rivkin indicated that the equipment would not be purchased and that no rent would be paid on it. Plaintiffs assert that this failure to pay rent damaged them in the amount of $738,184.00.  (Id. at ¶ 114-19). Furthermore, defendants have injured the good name and reputation of the Lickmans and their companies by spreading malicious untruths to employees of RC Land, vendors, and others doing business with RC Land.

Plaintiffs assert that all of these damages were caused by the defendants'

---

[4]In so holding, the Third Circuit Court of Appeals was interpreting 18 U.S.C. § 1964(c), which provides: "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any United States district court . . . ."

racketeering activity.  (Id. at ¶ 140).  Thus, plaintiffs have alleged both injury and that the cause of that injury is defendants' RICO activity.   Accordingly, they have standing to bring a RICO cause of action, and the defendants' motions with respect to standing will be denied.

   **2.  Continuity**

   As mentioned briefly above, to maintain a RICO action, a plaintiff must demonstrate "a pattern of racketeering activity."  18 U.S.C. § 1961(5).  A "pattern" must consist of at least two instances of racketeering activity.  Id. These acts are referred to as predicate acts.  The relevant predicate acts at issue in the instant case are wire and mail fraud.  18 U.S.C. § 1341, 1343.[5]  The

---

[5]Mail fraud is described in relevant part as follows:

> Whoever, having devised. . .any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . for the purpose of executing such scheme or artifice . . . places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, . . . shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1341.

   Wire fraud is defined as follows:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the

United States Supreme Court has held that the predicate acts must be "related" and "pose a threat of continued criminal activity." H.J. Inc. v. Northwestern Tele. Co., 492 U.S. 229, 239 (1989).

Defendants contend that the plaintiffs cannot meet the "continuity" requirement.[6]  Continuity is "both a closed- and open-ended concept, referring either to a closed period of repeated conducted, or to past conduct that by its nature projects into the future with a threat of repetition." Id. at 241.  We will discuss both types of continuity.

### A.  Closed-ended continuity

A close-ended scheme is established by demonstrating a series of related predicate acts lasting a "substantial period of time." Id. at 242.  "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement.  Congress was concerned in RICO with long-term criminal conduct." Id.   The Third Circuit Court of Appeals has held that "twelve months is not a substantial period of time." Hughes v. Consol-Pennsylvania Coal Co., 945 F.2d 594, 611 (3d Cir. 1991).  In so holding the court noted: "[C]ases finding substantial period. . . dealt with fraudulent conduct lasting years, sometimes over a decade.  Such findings of substantial time

---

> purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1343.

[6]As the parties raise no arguments with regard to the "relatedness" requirement, we will assume for purposes of this motion that this element has been met.

periods are consistent with Congress' intent to combat long-term criminal conduct." Id. (internal quotation marks omitted).

In the instant case, the plaintiffs allege that Rivkin and Jacobs embarked on their scheme on a date prior to February 15, 2005. (Amended Compl. ¶ 33). The plaintiffs filed the instant complaint in December 2005, approximately nine and one half months later. The Third Circuit Court of Appeals has held that conduct lasting for no more than twelve (12) months does not satisfy close-ended continuity. Tabas v. Tabas, 47 F.3d 1280, 1293 (3d Cir. 1995). Accordingly, the scheme alleged by the plaintiffs', lasting at most nine and a half months, is not lengthy enough to satisfy the requirements of close-ended continuity. Plaintiffs, in fact, make no argument as to close-ended continuity and rest their case solely on open-ended continuity.

**B. Open-ended continuity**

As plaintiffs have not alleged close-ended continuity, we must examine the Amended Complaint to determine if open-ended continuity has been established.

Open-ended continuity occurs where past conduct projects into the future by its very nature with a threat of repetition. H.J. Inc., 492 U.S. at 242. The United States Supreme Court illustrated the open-ended theory with two examples. One is where a "hoodlum" sells insurance to neighborhood shopkeepers to cover them against breakage of their windows, "telling his victims he would be reappearing each month to collect the 'premium' that would continue their 'coverage.'" Id. Because of the threat of repetition into the future on a monthly basis, open-ended continuity is established by this fact pattern. The second example is where the predicate acts are the entity's regular way of doing business. Id.

In the instant case, the plaintiffs allege that the defendants developed their

8

scheme to divest them of their ownership interest in RC Land.  Plaintiffs concede that a "short-term simple fraud that has been fully accomplished does not generally give rise to a RICO claim," but they argue that "the instant matter is not such a case."  (Doc. 27, Pl. Brief at 9).  They claim that this case involves a "far-reaching scheme that has affected numerous third parties, that is ongoing and that will continue for the foreseeable future unless the Defendants are restrained."  Id.   Plaintiffs aver that the objective of the scheme is to remove the Lickmans from any role with RC Land, to unlawfully obtain their interest in RC Land, and to exploit RC Land for their own personal interests.   The Amended Complaint alleges that "[u]nless constrained, the Defendants will continue their pattern of racketeering because the allegations of wrongdoing herein constitute their regular way of doing business."  (Amended Complaint at ¶ 134).

In order to decide the issue of open-ended continuity, we must scrutinize the complaint's allegations.  The plaintiffs' allege that the defendants' engaged in a scheme to "defraud and wrongfully obtain the Lickmans' ownership interest in Rausch Creek Land, L.P. and, through Rausch Creek Land, L.P., complete ownership of a certain parcel of property in Schuylkill County, Pennsylvania . . . the value of which is estimated to exceed Twenty-five Million Dollars ($25,000,000.00)."  (Amended Complaint ¶ 1, 33, 41).

This scheme is similar to one addressed by the Third Circuit Court of Appeals in Hughes v. Consol-Pennsylvania Coal Co., 945 F.2d 594 (3d Cir. 1991).   In Hughes, plaintiff landowners asserted that a railroad and coal company utilized fraud and threats in relation to their purchase of the plaintiffs' property.  The fraud allegedly resulted in plaintiffs selling the property for much less than it was worth, and the plaintiffs instituted a RICO action against the railroad and the coal company.  Id. at 607-08.  The Third Circuit examined the

case to determine if open-ended continuity had been established.  The court found that open-ended continuity did not exist because the plaintiffs each had only one parcel of land to sell, and once it was sold, the scheme was ended.  No future threat to the plaintiffs or society in general was present. Id. at 610.  The court described the case as a "one time racket to obtain a specific bounty." Id. at 610-11.

Likewise, in the instant case the plaintiff's have alleged a one time racket to obtain a specific bounty.  Although the plaintiffs aver that the pattern of racketeering is defendants' regular way of doing business, (Compl. ¶ 134), we find that such a bare allegation is not sufficient.  This assertion in the plaintiff's complaint is a conclusion of law and, although we accept all the complaints material allegations as true for purposes of deciding a Rule 12(b)(6) motion, we need not accept as true conclusory allegations of law. Morse, 132 F.3d at 906.  The material allegations of the complaint reveal that the scheme at issue is very narrowly defined by the plaintiffs.  Its singular aim is to obtain the plaintiffs' ownership interest in RC Land.   By all accounts the scheme has ended or is nearly complete.

According to the complaint, the defendants sought to have the plaintiffs pledge their share in the partnership as collateral for a loan from Defendant Jacobs.  Then the defendants sought to control the business and run it poorly in order that the loan would be defaulted and the ownership would be forfeited to Defendant Jacobs.  The complaint avers that the notice of default has already been sent to the plaintiffs. (Amended Compl. ¶ 94).   Thus, no further predicate acts are necessary for the completion of the scheme.  While there are allegations that the defendants will continue to engage in fraudulent conduct in the future, the facts as averred do not support that conclusion.  Even in

10

examining the facts in the light most favorable to the plaintiffs, we cannot find a threat of a long time harm, to either the plaintiffs or society in general, projecting into the future.  The plaintiffs' complaint simply does not properly assert a long term association that exists for criminal purposes as is required to establish a pattern of racketeering activity based upon open-ended continuity.  H.J. Inc. v. Northwestern Tel. Co., 492 U.S. 229, 242 (1989).

The sole case that plaintiffs cite in support of their claim of open-ended continuity, Tabas v. Tabas, 47 F.3d 1280 (3d cir. 1995),  is inapposite to the instant case.  Tabas dealt with a partnership where one of the partners had died.  The plaintiffs, the deceased partner's executors, brought a RICO suit against the other partners involving their handling of the partnership's assets.  The Third Circuit found that "close-ended" continuity was sufficiently alleged because the alleged fraud had been continuing for over three years.  Id. at 1294.  The court proceeded in dicta to discuss open-ended continuity.   The case involved allegations that the surviving partners were diverting partnership assets to personal use, thus, preventing the estate of the deceased partner from receiving its equal share of income.  The scheme had been proceeding for several years and the Third Circuit found that the plaintiffs had properly alleged that the fraudulent behavior was the defendants' regular way of doing business.  Id. at 1296.  Notably, in Tabas the scheme was an ongoing affair with no natural terminus.  Unlike, the instant case, which is more like H.J.,Inc., in that the scheme naturally ends when defendants obtain the plaintiffs' partnership interest.

In support of their position that the defendants' actions are ongoing, plaintiffs assert in their brief that since the filing of the complaint, the Defendant Rivkin was arrested for theft of equipment from the plaintiffs.   All parties agree

11

that the charges were later withdrawn.  As pointed out by the defendants, however, the actions leading to these charges, are in fact alleged in the amended complaint.  (Amended Complaint, ¶ 116 - 125).  Accordingly, the arrest, although it took place after the filing of the amended complaint, does not provide support that the defendants' actions are ongoing and threaten future harm.

We agree with the defendants that the scheme at issue is a "one shot affair" of short duration with no threat of continuity.  Accordingly, we find that the plaintiffs' have not alleged open-ended continuity.  As we have previously found that close-ended continuity is not alleged either, we will grant the defendants' motions to dismiss for plaintiffs' failure to properly allege a pattern of racketeering activity.

Although we have determined that plaintiffs' complaint will be dismissed, we will address the remaining issues raised by the defendants in the interest of completeness.

**3. Failure to allege that the enterprise and the racketeering activity are separate and distinct**

In order to limit the broad concept of an enterprise, three elements have developed that must be proven to establish a RICO enterprise.  <u>United States v. Riccobene</u>, 709 F.2d 214, 221 (3d Cir.1983) (citing <u>United States v. Turkette</u>, 452 U.S. 576, 583 (1981)).  "The enterprise must be (1) an ongoing organization (2) whose associates function as a continuing unit and (3) whose identity is separate and apart from the pattern of racketeering activity in which it engages. . .." <u>Id.</u>

Defendants assert that the plaintiffs have not properly alleged element three, that the enterprises possesses an identity separate and apart from the racketeering activity in which it engaged.  Accordingly, defendants argue that the

12

RICO claims should be dismissed. After a careful review, we disagree.

The Third Circuit Court of Appeals has held that although these three elements, including separateness, must be proven at trial, all that needs to be pleaded at this stage of the proceedings is the existence of the enterprise. Seville Industrial Machinery Corp. v. Southmost Machinery Corp., 742 F.2d 786, 790 (3d Cir. 1984).

In Seville, the district court dismissed the plaintiff's RICO action, concluding that the plaintiff had not properly pled each of the three elements necessary to establish a RICO violation as set forth in Riccobene and Turkette. Id. The Third Circuit reversed, explaining:

> In so ruling, the district court confused what must be pleaded with what must be proved. Riccobene and Turkett certainly stand for the proposition that a plaintiff, to recover, must prove that an alleged enterprise possesses the three described attributes. But neither case speaks to what must be pleaded in order to state a cause of action. The district court erred in applying the Riccobene-Turkette proof analysis to the allegations in [plaintiff's] complaint.
> We need cite no authority for the proposition that the Federal Rules of Civil Procedure were designed to eliminate the vagaries of technical pleading that once plagued complainants, and to replace them with the considerably more liberal requirements of so-called "notice" pleading. Under the modern federal rules, it is enough that a complaint put the defendant on notice of the claims against him. It is the function of discovery to fill in the details, and of trial to establish each element of the cause of action.

Id.

In the instant case, the defendants would have us apply the "technical pleading" that was rejected by the Third Circuit in Seville. That we cannot do. We must simply examine the amended complaint to determine if plaintiff has identified the alleged enterprise as "[t]he rules of pleading require nothing more at this early juncture than that bare allegation." Id.

Plaintiff's Complaint alleges that "Jacobs and Rivkin formed and used the

Jacobs-Rivkin association, an 'association in fact' and an 'enterprise' within the meaning of [the RICO statute]" (Am. Compl. ¶ 136). Plaintiff further asserts that this "association" engaged in a pattern of racketeering activity. (Id. at ¶ 137). Plaintiffs have, thus, included sufficient allegations to overcome defendants' argument. Accordingly, we find no merit to the defendants' argument with respect to "separateness."

### 4. Pleading fraud with particularity

Next the defendants argue that the plaintiff's have failed to plead the predicate acts with the required particularity. We disagree.

Plaintiffs base their RICO claim on predicate acts of mail and wire fraud. Under the Federal Rules of Civil Procedures, all averments of fraud must be stated with particularity. FED. R. CIV. PRO. 9(b). This requirement is met where the plaintiff pleads the date, place or time of the fraud. Lum v. Bank of America, 361 F.3d 217, 224 (3d Cir. 2004). Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation. Id.

Plaintiffs' complaint sufficiently pleads fraud. For example, the complaint asserts:

> Plaintiffs are informed and believe that on or about May 20, 2005, Rivkin made an interstate telephone call to a representative of Camden Iron and Metal, Inc., located in Camden New Jersey. The Lickmans are informed and believe that, during this conversation, Rivkin falsely claimed that the Lickmans stole materials and equipment from Rausch Creek Land, L.P. and that materials purchased by Camden Iron and Metal, Inc. were "stolen" and that the sales were "unauthorized."

Amended Complaint, ¶ 101

> In furtherance of the Jacobs-Rivkin Scheme, on May 9, 2005, Rivkin sent a letter, through the United States mails, to Ron. In this letter, Rivkin advised Ron, inter alia, that Ron, Lisa and Quinn were not allowed on Rausch Creek Land, L.P. property without Rivkin's personal escort. The Lickmans are informed and believe that a copy of this letter was also sent through the United

14

>           States mails to Jacobs and was distributed to all Rausch
>           Creek land, L.P. employees.
>                   The Lickmans are informed and believe that Rivkin
>           consulted with Jacobs about sending this letter before he
>           sent it and that Jacobs consented to Rivkin's decision to
>           sent it.
>                   The use of the mails to further the Jacobs-Rivkin
>           Scheme constitutes mail fraud as defined in 29 U.S.C. §
>           1341 and an act of racketeering as defined under 18
>           U.S.C. § 1961(1)(B).

Amended Compl. ¶ 81- 83.

These averments, and many others in the complaint, sufficiently state with particularity, including date and place of alleged fraudulent statements, who made the statements and the content of the message.  (See also Am. Compl. ¶ 94 - 110).  Accordingly, they meet the particularity requirement of Rule 9(b).

Defendants also attack the mail and wire fraud allegations by arguing that the messages involved do not amount to fraud.   The law does not require that all the messages contained in the mailing or telephone calls be relied upon by the plaintiff as a fraud.   In fact, completely "innocent" mailings can be used to support the mail fraud requirement.  Moreover, the use of the mails does not need to be an essential element of the scheme.  All that is required is that the mailings are incident to an essential part of the scheme.  Tabas v. Tabas, 47 F.3d 1280, 1295 n.18 (3d Cir. 1995).

In the instant case, the plaintiffs have alleged that the various phone calls and mailings made by the defendants were in furtherance of the scheme to obtain their (the plaintiffs') share of RC Land.  Thus, we reject the defendants' argument, and the motion to dismiss with regard to "particularity" will be denied.

   **5.  Final issues**

Two issues remain for us to decide.  The first is the disposition of the plaintiff's RICO conspiracy count.  The law provides that if the substantive RICO action fails, a related claim of RICO conspiracy must also fail.  Lightning Lube,

15

Inc. v. Witco Corp., 4 F.3d 1153, 1191 (3d cir. 1993).  Accordingly, we will dismiss the plaintiffs' RICO conspiracy count.

Based upon the above analysis, all the federal causes of action will be dismissed from this case.  The remaining sixteen counts assert state law causes of action.   The law provides that if the federal claims in a case are dismissed prior to trial, the state claims should be dismissed as well.  United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966).   Thus, we will also dismiss the plaintiffs' state law claims.

**Conclusion**

Based upon the forgoing reasons, we find that the plaintiff has not properly alleged a pattern of racketeering activity, therefore, this RICO action will be dismissed.  In certain circumstances it would be appropriate to dismiss the case provisionally and allow the plaintiffs to file an amended complaint.  Lorenz v. CSX Corp., 1 F.3d 1406, 1413 (3d Cir. 1993).  We do not provide the opportunity to amend, however, where such amendment would be futile.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).   In the instant case, an amendment would not cure the deficiency, therefore, we will dismiss the case without opportunity to amend.[7]  An appropriate order follows.

---

[7]To cure the complaint's deficiency, an amended complaint would have to define the scheme in a different manner from how the current amended complaint defines it.  Such an amendment would be stating a completely different case, not merely amending the current one.

16

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RONALD LICKMAN, an individual; LISA LICKMAN, an individual; QUINN LICKMAN, an individual; SDL CONSTRUCTION CORP., a Delaware Corporation; and THE HARRIMAN CORP., a Delaware Corporation,<br>**Plaintiffs**<br><br>v.<br><br>ROBERT RIVKIN, an individual; and GERALD S. JACOBS, an individual, and collectively as an Association In Fact; RAUSCH CREEK DEVELOPMENT, L.L.C., a Pennsylvania Limited Liability Company; RAUSCH CREEK LAND, L.P., a Pennsylvania Limited Partnership; RCL HOLDING, LTD., an Ohio Limited Liability Company; and RCL CAPITAL LTD., an Ohio Limited Liability Company,<br>**Defendants** | No. 3:05cv1793<br><br>(Judge Munley) |

## **ORDER**

**AND NOW**, to wit, this 21st day of June 2006, the defendants' motions to dismiss (Doc. 23 & Doc. 24) are hereby **GRANTED**. The plaintiffs' complaint is hereby **DISMISSED**. The Clerk of Court is directed to close this case.

BY THE COURT:

s/ James M. Munley
JUDGE JAMES M. MUNLEY
United States District Court